UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK R. CASTILLO,<br><br>        Petitioner,<br><br>   v.<br><br>HATTON,<br><br>        Respondent. | Case No. 1:18-cv-00251-LJO-JDP (HC)<br><br>FINDINGS AND RECOMMENDATION THAT COURT DENY FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS<br><br>ECF No. 15<br><br>OBJECTIONS DUE IN 14 DAYS |

Petitioner Frank R. Castillo, a state prisoner without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner argues that a writ should issue because of defects in his criminal trial. Specifically, he maintains that (1) his trial counsel was ineffective in failing to object to the introduction of evidence of a prior act, (2) the state trial court violated his constitutional rights in admitting the prior act evidence, and (3) the prosecutor engaged in misconduct in introducing the same evidence. I recommend that the court deny the petition and decline to issue a certificate of appealability.

**I.    Background**

Petitioner killed a man, who was passed out drunk on a sleeping bag, by kicking and stomping on his head. The alleged motive for the attack was petitioner's involvement in a love triangle with the victim and the victim's girlfriend. All three members of the love triangle, as well as some witnesses who testified at trial, were part of a larger group of homeless people living

in Fresno. Petitioner admitted responsibility for the victim's death but argued for a verdict of manslaughter. A jury found him guilty of second-degree murder, and petitioner was sentenced to a total term of 35 years to life.

I set forth below the facts of the underlying offenses, as stated by the Court of Appeal. A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

> On April 7, 2012, police responded to a report of domestic violence near East Tulare Avenue and North 2nd Street, an area where homeless individuals frequently congregated and slept. Upon arrival, the investigating officer made contact with Salvio and Vicky Guerrero. Both of them were visibly drunk. Salvio complained that his girlfriend, Ms. Guerrero, had punched him in the mouth and taken his cell phone. Ms. Guerrero was arrested for public intoxication and disturbing the peace.
>
> Castillo allegedly learned of Ms. Guerrero's arrest the following evening while drinking beer with James Paxton, another homeless person who was mutually acquainted with Castillo and Salvio. Although Mr. Paxton denied informing Castillo of Ms. Guerrero's arrest, his trial testimony confirmed that he and Castillo had a discussion about Salvio immediately prior to the subject incident. The conversation took place outside of a convenience store on the northeast corner of East Tulare Avenue and North 1st Street, i.e., one block over from where Salvio customarily slept at night. Castillo told Mr. Paxton that he loved Ms. Guerrero, that the two of them had been dating off and on, and that he was unhappy about her romantic relationship with Salvio. He also expressed anger over Salvio's involvement in Ms. Guerrero's recent arrest. The conversation ended with Castillo walking off in the direction of East Tulare Avenue and North 2nd Street after stating his intention to confront Salvio about these grievances.
>
> Yang Moua and Jeffrey Branning witnessed Castillo's subsequent encounter with Salvio. With the assistance of a Hmong language interpreter, Mr. Moua testified that he had been sleeping next to Salvio when Castillo appeared and began kicking Salvio in the head. Castillo cursed at Salvio throughout the attack, but Salvio did not respond or attempt to defend himself.
>
> Jeffrey Branning provided a more detailed account of the incident. Mr. Branning had been sleeping in the same encampment as Salvio and Mr. Moua when he awoke to the sound of yelling. He saw Salvio lying down and Castillo standing over him, cursing and demanding that Salvio get up. Salvio did not respond, and Mr. Branning initially suspected that he was pretending to sleep to avoid the confrontation. Castillo lifted up his foot and brought it crashing down on Salvio's head, "like you would to smash a pumpkin or stomp a divot into the ground if you play golf . . . . And then he started kicking him . . . kicking his head like a soccer ball." Mr. Branning estimated that Castillo stomped on Salvio's head approximately five to six times and kicked him eight or nine times. Castillo delivered the blows with "unbridled" force, "like somebody trying to kick a field goal [with a football], only he was using [Salvio's] head."
>
> Although Mr. Branning considered Salvio to be one of his best friends, he did not intervene and quickly departed from the area with Mr. Moua. He expressed regret

2

over this decision at trial, explaining that he was afraid of Castillo because Castillo had punched him in the face on a prior occasion. Castillo's claim on appeal is based on the admission of Mr. Branning's statements about the previous assault.

After leaving the scene, the two eyewitnesses met up with James Paxton at a nearby establishment. Castillo joined them approximately five to ten minutes later and bought drinks for the entire group. Shortly thereafter, Mr. Paxton went to check on Salvio and found him lying motionless, face down on the ground. Concerned that Salvio was not breathing, he went back across the street and told Mr. Branning to call 911. Paramedics soon arrived and transported Salvio to a local hospital. He was pronounced dead in the early morning hours of April 9, 2012.

Vicky Guerrero testified that Castillo later told her about what he had done to Salvio. She remembered him complaining of "throbbing" foot pain. According to Ms. Guerrero's testimony, Castillo was not immediately aware that he had killed the victim. Castillo knew that he "hurt him really bad," but assumed Salvio had at worst suffered a concussion or fallen into a coma.

Police officers located and arrested Castillo on April 12, 2012. He had by then obtained a new set of clothing, but neglected to discard his bloody footwear. Forensic analysis showed that the shoes Castillo was wearing at the time of his arrest contained traces of Salvio's DNA.

Dr. Venu Gopal, the pathologist who performed an autopsy on the victim's body, testified to the nature of his injuries and the cause of death. Toxicology results showed that Salvio had a blood alcohol level of .37 [grams per deciliter]. Despite the dangerously high level of alcohol in his system, Dr. Gopal determined the cause of death to be "head injury due to multiple blunt impacts."

Salvio sustained a depressed fracture above the right eyebrow. Such an injury is caused when a bone is broken and pushed inward, causing a depression. In other words, the right frontal bone of the victim's skull was pushed in toward his brain, which caused an indentation measuring 1.5 x 1 inches. Dr. Gopal testified that this would have required a "severe degree of force." In addition to the depressed fracture, the pathologist documented 22 bruises, scrapes, and lacerations on the victim's face. There were no defensive wounds.

The defense strategy was to acknowledge culpability for the homicide and argue for a verdict of something less than first degree murder. In his opening statement, defense counsel told the jury that the evidence would show Castillo was responsible for Salvio's death, but never formed the intent to kill. As trial progressed, it became apparent counsel was hoping to establish the affirmative defense of voluntary intoxication. There was no evidence of how much alcohol Castillo had consumed at the time of the killing, but the defense relied on the impressions of a lay witness who said she believed he was drunk on the night in question.

. . . .

Castillo's trial counsel reiterated the defense theory during closing argument: "I'm going to ask you, frankly, ladies and gentlemen, to find Frank Castillo guilty. . . . I'm going to ask you to find him guilty of involuntary manslaughter." Counsel went on to argue that Castillo neither intended to kill the victim nor realized his actions could be lethal, and thus did not act with a conscious disregard for life.

*People v. Castillo*, No. F068969, 2016 WL 4482962, at *1-3 (Cal. Ct. App. Aug. 25, 2016).

**II.  Discussion**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See* § 2254; *Harrington v. Richter*, 562 U.S. 86, 97 (2011); *Woodford v. Garceau*, 538 U.S. 202, 206-08 (2003). To decide a Section 2254 petition, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court reviews the state court's decision under the deferential standard of Section 2254(d). Section 2254(d) precludes a federal court from granting habeas relief unless a state court's decision is (1) contrary to clearly established federal law, (2) a result of an unreasonable application of such law, or (3) based on an unreasonable determination of facts. *See* § 2254(d); *Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018). A state court's decision is contrary to clearly established federal law if it reaches either a conclusion "opposite to" a holding of the United States Supreme Court or a conclusion that differs from the Supreme Court's precedent on "materially indistinguishable facts." *Soto v. Ryan*, 760 F.3d 947, 957 (9th Cir. 2014) (citation omitted). The state court's decision unreasonably applies clearly established federal law when the decision has "no reasonable basis." *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011). An unreasonable determination of facts occurs when a federal court is "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Loher v. Thomas*, 825 F.3d 1103, 1112 (9th Cir. 2016). A federal habeas court has an obligation to consider arguments or theories that "could have supported a state court's decision." *See Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2557 (2018) (quoting *Richter*, 562 U.S. at 102). On all issues decided on the merits, the petitioner must show that the state court's decision is "so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Even when a state court does not explicitly address a petitioner's claims on the merits, a Section 2254 petitioner must satisfy a demanding standard to obtain habeas relief. When a state court gives no reason for denying a petitioner's habeas claim, a rebuttable presumption arises that the state court adjudicated the claim on the merits under Section 2254(d). *See Richter*, 562 U.S. at 99. And a federal habeas court's obligation to consider arguments or theories that could support a state court's decision extends to state-court decisions that offer no reasoning at all. *See Sexton*, 138 S. Ct. at 2557.

If a state court denies a petitioner's habeas claim solely on a procedural ground, then Section 2254(d)'s deferential standard does not apply, *see Visciotti v. Martel*, 862 F.3d 749, 760 (9th Cir. 2016), but the petitioner faces another hurdle: if the state court's decision relies on a state procedural rule that is "firmly established and regularly followed," the petitioner has procedurally defaulted on his claim and cannot pursue habeas relief in federal court unless he shows that the federal court should excuse his procedural default. *See Johnson v. Lee*, 136 S. Ct. 1802, 1804 (2016); *accord Runningeagle v. Ryan*, 825 F.3d 970, 978-79 (9th Cir. 2016). If the petitioner has not pursued his habeas claim in state court at all, the claim is subject to dismissal for failure to exhaust state-court remedies. *See Murray*, 882 F.3d at 807.

If obtaining habeas relief under Section 2254 is difficult, "that is because it was meant to be." *Richter*, 562 U.S. at 102. As the Supreme Court has put it, federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id.* at 103 (citation omitted). Our habeas review authority serves as a "guard against *extreme* malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (emphasis added).

Here, petitioner raises three habeas claims: (1) ineffective assistance of trial counsel when his lawyer failed to object to evidence of prior uncharged conduct; (2) violation of his due process rights to a fair trial under the Fifth and Fourteenth Amendments when the prior conduct evidence

was introduced; and (3) misconduct by the prosecution in introducing the same evidence. The Court of Appeal rejected petitioner's first claim on the merits and his second claim as forfeited. Petitioner raises his third claim for the first time now. The California Supreme Court denied review. This court reviews the last reasoned opinion—that of the Court of Appeal.

### a. Ineffective Assistance of Counsel

A "doubly" deferential standard governs a federal habeas petitioner's claim of ineffective assistance of counsel. *See Richter*, 562 U.S. at 105. On direct appeal, the two-step inquiry from *Strickland v. Washington* guides the analysis for an ineffective-assistance-of-counsel claim. *See* 466 U.S. 668, 687 (1984). First, a criminal defendant must show some deficiency in performance by counsel that is "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* Second, the defendant must show that the deficient performance caused him prejudice, which requires "showing that counsel's errors were so serious as to deprive [the petitioner] of a fair trial." *Id.* On habeas review, coupled with the fairminded jurist standard of Section 2254(d), the *Strickland* requirements become even more deferential: the question is "whether there is *any reasonable argument* that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105 (emphasis added). That is, if there is even one reasonable argument that counsel did not violate the *Strickland* standard—even if the state court has not identified such argument—the petitioner cannot obtain habeas relief. *See id.* at 106.

Ineffective assistance of counsel cannot be shown for failure to object to admissible evidence. The admission of such evidence is neither outside the range of professionally competent assistance nor unduly prejudicial. *See United States v. Bosch*, 914 F.2d 1239, 1247 (9th Cir. 1990).

Generally, evidence that tends to show the defendant's propensity or disposition to act in a certain way is not admissible "when offered to prove [defendant's] conduct on a specified occasion." Cal. Evid. Code § 1101(a). However, such evidence may be offered when relevant to prove something else, such as motive. *Id.* § 1101(b). In petitioner's case, his actions were not a subject of significant dispute; petitioner acknowledged kicking the victim to death. *See Castillo*, 2016 WL 4482962, at *1. Thus, the evidence of petitioner's prior altercation with Branning is

unlikely to have "had any impact on the jury's conclusions regarding his conduct on the night in question." *Id.* at *4.

Although petitioner's actions were largely undisputed at trial, the same cannot be said for his state of mind. Petitioner's trial defense focused on whether he had the mens rea for murder. Considering this, introduction of the evidence that is now at the center of Castillo's petition might have had an acceptable purpose. Specifically, if the testimony was offered to show petitioner's state of mind, it would have been admissible under section 1101. In such case, a challenge to admission, had one been made, would have caused the trial court to weigh the testimony's probative value against the danger of undue prejudice—which is a matter of discretion for the judge. *See* Cal. Evid. Code § 352. Thus, the evidence of petitioner's altercation with Branning could have been admitted under the rules of evidence, even over an objection from counsel. And petitioner has not shown that it would have been an abuse of the trial judge's discretion to admit Branning's testimony regarding petitioner's prior conduct. Thus, under the deferential standard that applies here, petitioner's ineffective assistance of counsel claim fails.

Furthermore, even if the evidence of prior conduct had been admitted in error, the error was harmless—as noted by the Court of Appeal: The overwhelming weight of the evidence showed that petitioner had the necessary malice for murder and the evidence weighed against a finding of either voluntary or involuntary manslaughter. *See Castillo*, 2016 WL 4482962, at *4-5. "The strength of the prosecution's case, combined with the relatively pedestrian nature of the prior bad act, minimized the danger of prejudice." *Id.* at *5.

I see no flaw in the Court of Appeal's reasoning. Petitioner has not satisfied the requirements of *Strickland*. He has not shown that his defense counsel's representation was so deficient as to violate the Sixth Amendment. Indeed, he has not even shown that his counsel erred. *See Bosch*, 914 F.2d at 1247. Even if his attorney made a mistake in failing to object to the prior conduct evidence, petitioner has not shown that his attorney's inaction deprived him of a fair trial. Petitioner thus has not met the demanding standard set forth for reviewing an issue decided on the merits: He has not shown that the state court's decision was lacking in justification or that its reasoning contained any error, much less one "beyond any possibility for

fairminded disagreement." *Richter*, 562 U.S. at 103. For all of these reasons, petitioner's first ground for review must be denied.

### b. Prior Conduct Evidence

Petitioner contends that the admission of prior conduct evidence violated his rights to due process and a fair trial. The California Court of Appeal did not reach this issue, holding that "the question of admissibility is a forfeited issue" because petitioner failed to object at trial. Given this failure to object, respondent argues that this claim is procedurally barred.

Petitioner now faces the barrier of procedural default. To pass over this hurdle, he would need to show both cause for his default and actual prejudice from the alleged, underlying error. *See McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Ineffective assistance of counsel can be sufficient cause—potentially justifying procedural default—when a petitioner has raised the ineffective assistance of counsel claim in his state court appeal (as petitioner did). *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). The next step—showing actual prejudice—would require petitioner to show that the error at issue "so infected the entire trial that the resulting conviction violates due process." *United States v. Frady*, 456 U.S. 152, 169 (1982) (citation omitted). It would not be enough to show that wrongly-admitted evidence was "merely . . . undesirable, erroneous, or even universally condemned." *Id.* (quotation marks and citation omitted).

Petitioner cannot escape procedural default. As discussed above, his counsel was not ineffective, and so he cannot establish cause, even though he raised his ineffective assistance of counsel claim in his state appeal. *See McCleskey*, 499 U.S. at 494 ("Attorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default."). Petitioner also fails to show that he suffered actual prejudice as a result of the admission of the prior conduct evidence. He murdered a man by violently kicking and stomping on the victim's head, while yelling threats. The prosecution's evidence was more than adequate for the jury to find the mens rea required for murder. *See also Frady*, 456 U.S. at 171 (finding no

actual prejudice regarding an instruction on mens rea for murder because of overwhelming evidence of malice, including the "brutality of the killing itself").[1]

### c. Prosecutorial Misconduct

The court notified petitioner that his original petition appeared to contain unexhausted claims and gave him the opportunity to amend his petition. *See* ECF No. 14. In response, petitioner filed the instant amended petition. *See* ECF No. 15. The amended petition still contains the unexhausted prosecutorial misconduct claim that appeared in the original petition.

Petitioner alleges that the prosecution engaged in misconduct by not adhering to "stipulations" that petitioner alleges were agreed upon by—perhaps he means accepted by—the court. In response to the form question about why these grounds were not presented to any other court, petitioner asserts, "prosecution misconduct reason why was new evidence to support my claim." ECF No. 15 at 5. Petitioner does not provide any new evidence or further explain this claim.

Per the exhaustion doctrine, federal courts generally will not consider a habeas claim without first giving the state courts an opportunity to act. *See Granberry v. Greer*, 481 U.S. 129, 133 (1987). The doctrine, which is driven by concerns of comity, requires petitioners to "seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error." *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982).

The doctrine is not, however, an absolute bar on federal consideration of an unexhausted claim. If a claim is unexhausted, a federal court asks "whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional . . . court proceedings before reviewing the merits of the petitioner's claim." *Granberry*, 481 U.S. at 134. If a petitioner "does not raise even a colorable federal claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal

---

[1] Even if petitioner's claim were not barred, it would fail on the merits. There is no Supreme Court precedent prohibiting the use of prior bad acts to prove propensity. *See Estelle v. McGuire*, 502 U.S. 62, 68-75 n.5 (1991); *Mejia v. Garcia*, 534 F.3d 1036 (9th Cir. 2008).

9

courts will all be well served . . . [if] the district court denies the habeas petition." *Id.* at 135; *see also* 28 U.S.C. § 2254 (b)(2).

Petitioner's unexhausted prosecutorial misconduct claim is not colorable. Thus, notwithstanding the exhaustion doctrine, I recommend that we reach the merits and deny it in the interest of efficiency.

Prosecutorial misconduct is a due process claim subject to narrow review. *See Renderos v. Ryan*, 469 F.3d 788, 799 (9th Cir. 2006). The misconduct must have so "infec[ted] the trial with unfairness" so as to make a conviction "a denial of due process." *Greer v. Miller*, 483 U.S. 756, 765 (1987) (citation omitted); *see Bonin v. Calderon*, 59 F.3d 815, 843 (9th Cir. 1995) ("To constitute a due process violation, the prosecutorial misconduct must be so severe as to result in the denial of [the petitioner's] right to a fair trial."). Under this standard, a petitioner must show that the verdict would have been different but for the alleged impropriety. Petitioner cannot make this showing.

Although the claim is vague and underdeveloped,[2] petitioner appears to assert that the prosecution disobeyed the trial court by introducing evidence of petitioner's uncharged prior act. This assertion is contrary to the trial record:

> [THE COURT:] There is also a request as part of that to preclude admission of prior bad acts. And the reference that I understood from that, Mr. Foster, was 1101. I didn't see anything in the People's trial brief where there was going to be a suggestion that some prior conduct of Mr. Castillo here would be brought before the jury under 1101. Is there?
>
> [PROSECUTION]: No, Your Honor. Not regarding any of the convictions or arrests. There is going to be some testimony from Mr. Branning that the defendant had struck him previously. That was testified to at the prelim. But as far as 1101(b) is concerned, no.
>
> THE COURT: And the issue about prior bad acts, meaning striking Mr. Branning or –
>
> [DEFENSE]: No issue there, Your Honor.

---

[2] This provides another basis to deny petitioner's third claim. Conclusory allegations not supported by a statement of specific facts are insufficient to state a claim for a constitutional violation warranting federal habeas relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

10

THE COURT: No issue. You are concerned primarily, I take it, about the various subjects of convictions that will have been referenced. And we'll talk about the Castro motion, right?

[DEFENSE]: Correct.

THE COURT: Okay. With that understanding the court will grant that as well.

RT 216.

The prosecution appears to have conducted its case in accordance with the court's directive and in agreement with petitioner's trial counsel regarding evidence of prior acts. Even if it had been error for the prosecution to introduce this evidence, the error would have been harmless, as explained by the Court of Appeal, because there is overwhelming evidence in this case that the jury could rely upon to find petitioner had the appropriate level of intent for murder. Petitioner has not shown that the prosecution's introduction of prior act evidence deprived him of a fair trial.

Petitioner is not entitled to relief on this claim, and no other claim remains. I recommend that the court deny the petition in its entirety.

### III. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has not made a substantial showing of the denial of a constitutional right.

Thus, the court should decline to issue a certificate of appealability.

**IV.    Findings and Recommendations**

I recommend that the court deny the petition and decline to issue a certificate of appealability.  Under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California, I submit the findings and recommendations to the U.S. District Court Judge presiding over the case.  Within fourteen days of the service of the findings and recommendations, any party may file written objections to the findings and recommendations.  That document must be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The presiding District Judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:     October 30, 2019                                  _____
UNITED STATES MAGISTRATE JUDGE

No. 204